UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-10038-RGS

MBO LABORATORIES, INC.

v.

BECTON, DICKINSON & CO.

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

May 6, 2011

STEARNS, D.J.

In this patent infringement case, plaintiff MBO Laboratories, Inc. (MBO) asserts that defendant Becton, Dickinson and Company's (Becton's) SafetyGlide device infringes U.S. Reissue Patent No. 36,885 (the RE '885 patent) (filed July 1, 1999). At issue are competing syringe designs intended to protect health care workers from needle-stick injuries. Presently before the court is Becton's motion for summary judgment of non-infringement of claims 13, 19, and 20 of the RE '885 patent. The court heard oral argument on May 4, 2011.

BACKGROUND

MBO is the assignee of the RE '885 patent, which is a reissue of U.S. Patent No. 5,755,699 (the '699 patent). The Federal Circuit described the patented technology as follows:

The RE '885 patent teaches a syringe that protects against needle-stick injuries by sheathing a contaminated needle in a flange-covered guard. Specifically, the patent discloses a needle mounted inside a "guard body" wherein the needle can slide relative to the guard. *See* RE '885 patent figs. 4, 6B, col. 2 ll. 65-67, col. 3 ll. 1-3. "The needle's sharp end protrudes through a hole in the front of the guard, permitting it to be inserted into the patient. When the needle is removed from the patient, the health care worker slides the needle backwards relative to the guard." *MBO*, 474 F.3d at 1326. As soon as the health care worker slides the needle passed a "blocking flange," which is mounted to the guard body, the flange snaps over the needle tip and sheaths it inside the guard body. RE '885 patent at [57]. The figures below from the RE '885 patent display how the needle, guard body, and flange appear before and after a health care worker uses a syringe on a patient.



Figures 4 and 6B from the RE '885 patent

*MBO Labs., Inc. v. Becton, Dickinson & Co.*, 602 F.3d 1306, 1308 (Fed. Cir. 2010) (*MBO II*).

The allegedly infringing product, Becton's SafetyGlide syringe, is also designed to prevent accidental needle-stick injuries. The SafetyGlide device consists of a needle

assembly screwed onto a conventional syringe.  When the needle is withdrawn from the patient, the health care worker pushes a hinged arm forward to advance a guard over the needle, until the guard covers the needle tip as shown in the illustration below:



**Before Activation Of Safety Device**



**After Activation Of Safety Device**

Def.'s Mem. at 2; *see also* Bajars Decl. at Exs. A-C.

On January 7, 2003, MBO filed suit against Becton in this court alleging that Becton's SafetyGlide needles infringed claims 13, 19, 20, 27, 28, 32, and 33 of the RE '885 patent.  *See* Pl.'s *Markman* Br. (Dkt. #77) at 1.  Following a *Markman* hearing,[1] the court (Lindsay, J.) construed several claim terms, including the requirement that the needle be shielded "immediately," the requirement that the guard "slidably receive" the needle, and the requirement that the blocking flange be "mounted" on the guard.  *See*

---

[1] *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).

*MBO Labs., Inc. v. Becton, Dickinson & Co.*, 385 F. Supp. 2d 88 (D. Mass. 2005). On appeal, the Federal Circuit reversed all of the district court's claim interpretations except for the construction of the term "immediately" in claims 13, 19, 20, 27, and 28. The Federal Circuit remanded the case to this court to conduct further proceedings consistent with its revisions of the claim constructions. *See MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1334 (Fed. Cir. 2007) (*MBO I*).

Becton then filed a motion for summary judgment of invalidity, arguing that claims 27, 28, 32, and 33 of the RE '885 patent were invalid because MBO had recaptured subject matter that it had surrendered during the patent prosecution.[2] With respect to claims 13, 19, and 20, Becton moved for summary judgment of non-infringement. On March 26, 2008, this court (Tauro, J.),[3] held the RE '885 patent invalid under the rule against recapture. The court denied as moot Becton's motion for summary judgment of non-infringement of claims 13, 19, and 20, and entered final judgment in favor of Becton. MBO appealed, arguing that the district court had erred in invalidating the RE '885 patent in its entirety.

On April 12, 2010, the Federal Circuit affirmed the district court's holding that

---

[2] *See Edward Lifesciences LLC v. Cook Inc.,* 582 F.3d 1322, 1329, 1335 (Fed. Cir. 2009).

[3] The case was transferred from Judge Lindsay's session to Judge Tauro's session on March 8, 2007.

4

claims 27, 28, 32, and 33 of the RE '885 patent were invalid under the rule against recapture. *MBO II*, 602 F.3d at 1314-1316. However, the Federal Circuit reversed the district court's invalidation of the remaining claims 13, 19, and 20, and remanded the case to this court to address Becton's motion for summary judgment of non-infringement. *Id.* at 1319.[4]

## DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-250 (1986). The moving party bears the burden of establishing that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

Patent infringement analysis involves two steps: (1) the threshold construction of the meaning and scope of the asserted claim, followed by (2) a determination of whether the accused product infringes the properly construed claim. Where the parties

---

[4] The case was transferred from Judge Tauro's session to this session on April 22, 2010.

5

do not dispute any relevant facts regarding the accused product, but disagree over which of two possible meanings of a patent claim is proper, the question of literal infringement collapses into one of claim construction and is thus amenable to summary judgment. *Athletic Alts., Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed. Cir. 1996); *see also Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1453 (Fed. Cir. 1998) ("[C]laim construction is a matter of law to be determined exclusively by the judge.").

In support of its motion for summary judgment, Becton contends that its SafetyGlide product does not infringe the RE '885 patent because it does not contain three key limitations specified in claims 13, 19, and 20 of the patent. First, the SafetyGlide device has a fixed needle, rather than a retractable needle. Second, the guard mechanism in the SafetyGlide device is not activated "immediately" upon withdrawal of the needle from the patient; rather, it is activated only after the health care worker manually pushes the hinged arm forward to activate the guard. Third, the SafetyGlide syringe does not contain a flange that is spring urged over the front of the device body, as required by the asserted claims. MBO counters that there are sufficient issues of fact in dispute to preclude an entry of summary judgment.

**I. Retractable Needle**

Claim 13 of the RE '885 patent reads as follows:

> A method of immediately and positively precluding needlestick

6

>injury from a contaminated needle comprising the steps of:
>>providing an elongated needle having a pointed end,
>>providing a body slidably receiving the needle and having a front surface through which *the needle extends for use and is retracted into the body after use*,
>>providing a spring having an imperforate blocking flange portion, and,
>>affixing said spring to the body so as to preclude axial movement of said spring and to dispose the flange portion in adjacent relation to the body front surface and in spring-urged relation against the needle extending from the body when the needle is in use,
>>whereby when *the needle is retracted after use* to bring its pointed end flush with the body front surface, the imperforate blocking flange is spring urged over the body front surface past the needle point thereby to block any reemergence of the needle from the body.

Pirozzolo Decl. at Ex. 1 (RE '885 patent) col. 10, ll. 24-43 (emphasis added). Claim 19 similarly specifies a method in which the needle "is retracted toward and into the body after use." *Id.* col. 12, ll. 41-42. The parties have not previously sought construction of the term "is retracted" in claims 13 and 19. Although the Federal Circuit did not explicitly construe the term, it used the word "retraction" to describe "backwards movement . . . of the needle into a stationary guard." *MBO I*, 474 F.3d at 1331.

Becton argues that because its SafetyGlide device has a fixed needle, it lacks a needle that "is retracted," and thus, it does not directly infringe claims 13, 19, and 20.[5]

---

[5] Claim 20 depends from claim 19 and thus includes its limitations.

In response, MBO alleges that in order to obtain approval from the U.S. Food and Drug Administration (FDA) to sell its SafetyGlide syringes, Becton submitted videos to the FDA of a simulated use trial, in which health care workers used the SafetyGlide device in a retraction mode. *See* Pl.'s Opp'n Mem. at 6; Third Tolkoff Decl. ¶¶ 23-25. However, as Becton points out, these video clips do not show acts of direct infringement because they were created before the patent-in-suit issued. Def.'s Reply Mem. at 6. Moreover, the demonstration does not contradict Becton's observation that the SafetyGlide needle, even when used in a retraction mode, does not retract in the sense of "moving backwards into a stationary guard." Rather, if a health care worker were to activate the SafetyGlide guard while the needle remained in the patient's arm, it is the guard that would move (forward) to cover the needle tip by pushing back against the surface of the patient's skin. The fixed needle would not – and could not – move backwards within the body of the SafetyGlide device.[6] Thus, there is no literal infringement of the retraction limitation.

## II. "Immediately"

Becton further argues that its SafetyGlide device does not infringe the RE '885

---

[6] MBO's counsel's attempt to illustrate retraction of the SafetyGlide device by sliding the safety guard back and forth on the needle instead underscored the fixity of the needle.

patent because it does not "immediately" preclude needle-stick injury, as required by claims 13, 19, and 20. The Federal Circuit affirmed the construction of the term "immediately" as meaning "simultaneously with the needle's withdrawal from the patient." *MBO I*, 474 F.3d at 1330. Becton argues that the guard on the SafetyGlide device is *not* designed to be activated simultaneously with the needle's withdrawal from the patient. *See* Def.'s Statement of Undisputed Facts ¶¶ 28-30. In support of this argument, Becton points to SafetyGlide product materials, which show that the manual guard is designed to be activated *after* the needle is withdrawn from the patient. *See id.* ¶ 27; Bajars Decl. ¶ 3(E) (providing a link to a demonstration video on Becton's website, which shows the SafetyGlide guard being activated after the needle is withdrawn from the patient); *id.* at Ex. C (SafetyGlide product brochure stating that "[a]ctivation occurs after needle is withdrawn").

In response, MBO points to emails written by two employees of Becton's marketing department, stating that the SafetyGlide guard "may" be activated while the needle remained inserted in the patient. *See* McCormick Decl. at Exs. 3-4.[7] However, as Becton notes, these hypothetical discussions of whether the SafetyGlide guard *could* be activated as the needle is withdrawn from a patient do not demonstrate any actual

---

[7] These emails were solicited by William McCormick, a founder of MBO. *See id.* ¶¶ 9-10.

9

direct infringement by Becton. *See DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1303-1304 (Fed. Cir. 2006) (finding that direct infringement of a method claim could not be inferred from the sale of a device that had two configurations, only one of which infringed the patent-in-suit).

MBO also provides a declaration by its expert, Josh Tolkoff, containing summaries of interviews he conducted with clinicians who use the SafetyGlide syringes. Tolkoff states that two nurses told him that they prefer to activate the SafetyGlide mechanism while the needle is still in the patient, and that they "recall" that Becton sales representatives had demonstrated this technique. *See* Third Tolkoff Decl. ¶¶ 30-31. As Becton points out, this evidence is inadmissible hearsay and cannot be relied upon by the court on a motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(4).

Even if the nurses' statements recounted in Tolkoff's declaration were admissible, they are insufficient to support a finding that Becton *intended* to induce infringement of MBO's patent. To prove inducement of infringement, the patentee has the burden of first showing "direct infringement for each instance of indirect infringement." *DSU*, 471 F.3d at 1303, citing *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004). If an act of direct infringement is shown, the patentee has the additional burden of showing that the defendant actively

and knowingly aided and abetted the act of direct infringement. *See DSU*, 471 F.3d at 1303, 1305; *Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990) ("The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements."). MBO has failed to show that any acts of direct infringement have occurred, or that Becton possessed the specific intent to encourage infringement of the RE '885 patent. *Cf. Vita-Mix Corp. v. Basic Holding*, 581 F.3d 1317, 1328-1329 (Fed. Cir. 2009) (affirming district court's grant of summary judgment on defendant's claim of non-inducement where plaintiff relied on "product instructions and the design of the device to support an inference of intent").

### III. Flange Position

Finally, Becton argues that its SafetyGlide device does not infringe claims 13, 19, and 20 because it does not have a flange that is spring urged over the body front or forward surface, as the claims require. The relevant portion of claim 13 states:

> whereby when the needle is retracted after use to bring its pointed end flush with the body front surface, *the imperforate blocking flange is spring urged over the body front surface* past the needle point thereby to block any reemergence of the needle from the body.

RE '885 patent col. 10, ll. 39-43 (emphasis added). Similarly, claim 19 states:

> whereby when the needle is retracted after use to bring its pointed end into immediate proximity to the body forward surface, *the*

11

> *imperforate blocking flange is spring urged over the body forward surface* past the needle pointed end thereby to block any reemergence of the needle from the body and past the flange to present [sic] a needlestick hazard.

*Id*. col. 12, ll. 51-57 (emphasis added). The terms relating to flange position ("over the body front surface" in claim 13 and "over the body forward surface" in claim 19) have not been expressly construed in prior proceedings before this court or the Federal Circuit. However, the patent specification defines the "body" as follows:

> a needle shielding or guide body having an opening shown as a bore extending from port means in its front surface or distal end to proximal end within which needle is slidably received. While the body is shown for illustrative purposes as being of square or rectangular cross-section, the particular configuration may vary within the limits of the required structure and function thereof.

RE '885 patent col. 5, ll. 34-42. Thus, the body shields the needle; the needle itself is not part of the body.

The parties disagree as to which part of the SafetyGlide device constitutes the "body," and whether the flange is located behind or in front of the body. Becton argues that the SafetyGlide flange is located *behind* the front surface of the body, as distinct from the flange position limitations of claims 13 and 19.

12

**Becton's Image of its SafetyGlide Device**:  **Image from MBO's RE '885 Patent:**

    **Body   Flange   Needle**

 

                                            **Flange                 Body**

*See* Def.'s Mem. at 19; Def.'s Reply Mem. at 13. In contrast, MBO contends that the "body" of the SafetyGlide device is the structure in which the needle rests after use, and thus the flange is located in front of the body (as in claims 13 and 19 of the RE '885 patent).

**MBO's Image of Becton's SafetyGlide Device**



*See* Pl.'s Opp'n Mem. at 19; Third Tolkoff Decl. ¶ 8.[8] Even if the court agreed with MBO's configuration of the SafetyGlide device (it does not),[9] and found that the product fulfilled the flange position limitations of the RE '885 patent, Becton would still be entitled to summary judgment of non-infringement of claims 13, 19, and 20. This is because of Becton's non-infringement of the "retracted" and "immediately" limitations of the claims. To literally infringe a patent claim, an accused product must include every limitation of the claim. *See Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1366 (Fed. Cir. 2002), citing *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1583 (Fed. Cir. 1995).

**IV. Doctrine of Equivalents**

Under the doctrine of equivalents, a product that does not literally infringe the express terms of a patent claim may nonetheless be found to infringe if there is

---

[8] MBO also argues that the Federal Circuit's construction of the term "mounted on said body" supports a finding of infringement of the flange position limitations. *See* Pl.'s Opp'n Mem. at 16-17, citing *MBO I*, 474 F.3d at 1333-1334. This argument is irrelevant for the simple reason that the term "mounted on said body" does not appear in the remaining claims at issue in this case (claims 13, 19, or 20), but instead appears in a claim that has been invalidated by the Federal Circuit.

[9] The court disagrees with MBO because the specification of the RE '885 patent makes clear that the port hole at the distal end of the body defines the front or forward surface. The two devices differ in the positioning of the real (or in Becton's case, hypothetical) port hole so as to place the MBO flange forward of the hole, and the Becton flange behind it.

14

"equivalence" between the elements of the accused product and the claimed elements of the patented invention. *See Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950). "[T]he doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997).

There is a "well-established limitation on the doctrine of equivalents known as 'prosecution history estoppel,' whereby a surrender of subject matter during patent prosecution may preclude recapturing any part of that subject matter, even if it is equivalent to the matter expressly claimed." *Id.* at 18-19. Where the patent holder is unable to establish that a claim amendment had a purpose unrelated to patentability, "the court should presume that the purpose behind the required amendment is such that prosecution history estoppel would apply." *Id.* at 19. In addition, "if a court determines that a finding of infringement under the doctrine of equivalents 'would entirely vitiate a particular claim[ed] element,' then the court should rule that there is no infringement under the doctrine of equivalents." *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003), quoting *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1280 (Fed. Cir. 2001).

Although counsel for MBO has disclaimed any argument based on the doctrine of equivalents, as a matter of completeness, the court has examined – and rejects –

potential arguments based on the doctrine. Prosecution history estoppel and the "all-elements rule"[10] bar MBO from seeking equivalents of the retraction limitation. As the Federal Circuit noted, MBO distinguished its invention from prior art, among other grounds, because it "included a safety flange that engages 'when the needle is *slidably retracted*' into the body." *MBO I*, 474 F.3d at 1327-1328 (emphasis added). MBO is thus precluded from disclaiming the retraction limitation under the doctrine of equivalents. *See Warner-Jenkinson Co., Inc.*, 520 U.S. at 30.

Similarly, MBO is not entitled to equivalents of the "immediately" limitation because it surrendered any claim that manually securing the needle *after* withdrawal from a patient could be equivalent to securing the needle immediately upon withdrawal. As the Federal Circuit noted, "[t]he patentee here has clearly indicated via the specification and the prosecution history that the invention provides, as an essential feature, *immediate needle safety upon removal from the patient.*" *MBO I*, 474 F.3d at 1330 (emphasis added).

Finally, Becton argues persuasively that prosecution history estoppel and the all-

---

[10] The all-elements rule is meant to preserve the public notice function of a claim by ensuring that the doctrine of equivalents is not permitted "such broad play as to effectively eliminate that element in its entirety." *Warner-Jenkinson*, 520 U.S. at 29; *see also Lantech, Inc. v. Keip Mach. Co.*, 32 F.3d 542, 546 (Fed. Cir. 1994) ("All limitations in a claim must be considered meaningful.").

16

elements rule bar application of the doctrine of equivalents to the flange position limitations. To overcome a prior art rejection during prosecution of U.S. Patent No. 5,395,347 (the '347 patent),[11] MBO narrowed its claims to require a flange that is "spring urged over the front surface of the body." *See* Def.'s Statement of Undisputed Facts ¶¶ 36(A)-(E). Moreover, the RE '885 patent specification criticizes prior art devices that lack a flange located "immediately adjacent [to] the forward surface of the body," which automatically snaps into a "needle-blocking position." RE '885 patent col. 7, ll. 1-25. The specification's disavowal of such devices precludes application of the doctrine of equivalents to broaden the flange position limitation. *See Astrazeneca AB v. Mut. Pharm. Co., Inc.*, 384 F.3d 1333, 1340 (Fed. Cir. 2004) ("Where the general summary or description of the invention describes a feature of the invention . . . and criticizes other products that lack that same feature, this operates as a clear disavowal of these other products."). Thus, Becton's SafetyGlide device does not infringe claims 13, 19, and 20 of the RE '885 patent, either literally or under the doctrine of equivalents.

---

[11] The '347 patent is in the direct family chain of the RE '885 patent. The RE '885 patent is a reissue of the '699 patent, which is a continuation of the abandoned '772 application, which in turn is a continuation of the '347 patent. Def.'s Mem. at 20 n.8.

ORDER

For the foregoing reasons, Becton's motion for summary judgment of non-infringement of claims 13, 19, and 20 of the RE '885 patent is <u>ALLOWED</u>. The clerk will enter judgment for Becton and close the case.

SO ORDERED.

s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE